# Lehman *v.* Chambersburg & Gettysburg Electric Railway Company, Appellant.

*Street railway companies—Eminent domain—Relocation of tracks— Consent of property owners—Injunction—Costs.*

1. If a street railway company seeks to exercise the right of eminent domain conferred upon street railways by the Act of June 1, 1907, P. L. 368, for the purpose of relocating a portion of its tracks, it may do so after it has secured the consent of the owners of at least fifty-one per centum of the foot frontage of the entire distance traversed longitudinally on the highway in the township. It is not a prerequisite to the exercise to the right of eminent domain that the owners of fifty-one per centum of the foot frontage covered by the relocation at a particular point, shall be obtained.

2. Where a street railway company laid its tracks prior to the act of June 1, 1907, along one side of a public road, except at one point where it deflected its tracks by a jog to the other side of the road

on account of an injunction secured by a nonconsenting abutting landowner, the company may after the passage of the Act of June 1, 1907, P. L. 368, exercise the right of eminent domain to straighten its line and relocate its tracks at the point of deflection, without again getting the consents of the owners of fifty-one per centum of the foot frontage on the road. The consents procured prior to the passage of the act are sufficient to sustain the exercise of the right of eminent domain at the point in question.

3. Where an injunction is properly issued prior to the Act of June 1, 1907, P. L. 268, restraining a street railway company from laying its tracks on a road in front of an owner's property, and after the passage of the act, and after the street railway company has announced its intention to relocate its tracks in front of plaintiff's land, the case is tried, and the injunction is improperly continued until the new consent shall be obtained, the Supreme Court in reversing the decree will impose the costs upon the street railway company.

Argued March 9, 1909.  Appeal, No. 32, Jan. T., 1909, by defendant, from decree of C. P. ·Franklin Co., Equity Docket 2, page 359, on bill in equity in case of Amos B. Lehman v. Chambersburg & Gettysburg Electric Railway Company.  Before FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ.  Reversed.

Bill in equity for an injunction.  Before GILLAN, P. J.

From the record it appeared that the bill was filed on June 8, 1902, and a preliminary injunction was granted. The defendant company laid its tracks along the south side of the Chambersburg turnpike road, except at the line of plaintiff's land, where it deflected its tracks to the north side. After the passage of the Act of June 1, 1907, P. L. 368, the company resolved to straighten or relocate its tracks in front of plaintiff's property, through the exercise of the right of eminent domain.

The cause was then placed on the trial list and, after hearing, the court filed his findings of fact and conclusions of law and entered a decree on March 24, 1908, dismissing plaintiff's bill and dissolving the injunction.

On March 25, 1908, the defendant filed its bond and petition for the appointment of viewers.

On March 31, 1908, plaintiff filed exceptions to the court's

findings and decree and on July 28, 1908, the court filed a second opinion and decree, continuing the injunction until the railway company could show it had obtained the consents of the supervisors and the owners of at least fifty-one per cent of the foot frontage of the entire distance to be traversed longitudinally on the highway by the relocation.

Other facts appear by the opinion of the Supreme Court.

*Error assigned* was the final decree which was as follows:

All the exceptions except that which relates to imposition of costs on the plaintiff are overruled. In order that the defendant may, if it can, avail itself of the power and exercise the right of eminent domain, the preliminary injunction heretofore granted is dissolved, in so far as the same may interfere with the defendant's beginning and conducting condemnation proceedings according to law; and same is made perpetual for the purpose only of preventing the construction by the defendant of its railway and appliances on the south side of the turnpike in front of plaintiff's property, without having brought itself within the provisions of June 1, 1907, in accordance with the views expressed in the opinion filed July 28, 1908. The plaintiff's bill will be dismissed upon the defendant availing itself of the power and exercising the right of eminent domain in accordance with the views expressed in said opinion. Defendant to pay the costs.

*Walter K. Sharpe*, of *Sharpe & Elder*, with him *O. C. Bowers* and *Charles Walter*, for appellant.—The court erred in refusing to dissolve the injunction until the defendant could show that it had obtained the consents of the owners of at least fifty-one per cent of the foot frontage of that portion of the highway traversed longitudinally by said relocation. The case at bar illustrates the unreasonableness of such a construction. The plaintiff owns or has a life estate in much more than fifty-one per cent of the foot frontage covered by the proposed relocation. Therefore it necessarily follows, if the court has interpreted the act correctly, that the defendant cannot relocate its track until it has procured the plaintiff's consent. Not being able to procure his consent,

the relocation is prevented and that portion of the act which had for its plainly expressed purpose the enlarging of the rights of electric railway companies becomes a nullity. The company is powerless now to eliminate this curve and double-grade crossing from its tracks as it was before the act of 1907 was passed. We earnestly insist that this effort of the court to thus limit the act and nullify that portion of it was wholly unjustifiable and contrary to the well established rule that should be applied to the interpretation of every statute, that is, that it shall be so construed that every word and every sentence shall stand and be effective, if such construction be possible.

Under the rule laid down in Dryden v. Railway Company, 208 Pa. 316, the court will not go beyond the plain reading of the act in order to find some fact to defeat its main purpose. While that case involved the interpretation of the act of 1869, the principle therein laid down and the reasoning of the court is quite applicable to the case at bar.

This court has uniformly held that a legislative grant of a right or franchise, especially when its purpose is the performance of a public act, carries with it such implied power or right as may be necessary to make the grant effective: Monongehela Bridge Co. v. Kirk, 46 Pa. 112; McManus's Appeal, 5 Pa. Superior Ct. 65; Lockhart v. Craig St. Ry. Co., 139 Pa. 419; Dryden v. Pittsburg, etc., Ry. Co., 208 Pa. 316; Hannum v. Media, etc., Elec. Ry. Co., 221 Pa. 454.

. *J. A. Strite,* with him *D. Edward Long,* for appellee.—The consents required by the Act of June 1, 1907, P. L. 368, must be consents to exercise the right of eminent domain. The consents offered in evidence are all consents to the construction, maintenance and operation of a railway on the south side of the road, or on the north side of the road, or on the middle of the road. None are consents to the exercise of the right of eminent domain on said road. The act of assembly admits of but one construction: "Before the right of eminent domain herein conferred shall be exercised upon any highway in any township, excepting for the purpose of cross-

ing such highway, the consent of the owners of at least fifty-one per centum of the foot frontage of the entire distance to be traversed longitudinally, on said highway in said township, shall be obtained." Consents given before the passage of the act could not have been consents to exercise the right of eminent domain for the reason that no such right existed by virtue of any law as to the property of abutting landowners before the passage of the act. Consent to the construction of an electric railway in front of the property of the consenting party, with knowledge that the railway could be constructed in front of the property of no other abutting landowner without the consent of such other landowner, is a very different thing from consent to the compelling of some other abutting property owner to permit the building of the railway in front of his property and without his consent: Woods v. Greensboro Nat. Gas. Co., 204 Pa. 606; Commonwealth v. Erie, etc., R. R. Co., 27 Pa. 339.

Whether under the rule which existed prior to the Act of June 1, 1907, P. L. 368, namely, that where the track is constructed entirely on one side of the road, the consent of the abutting landowners on that side only would be sufficient, as was held in North Penna. R. R. Co. v. Inland Traction Co., 205 Pa. 579, or whether under the act of 1907, the consent of fifty-one per centum of the foot frontage on both sides of the road is required, the burden is on the company to show the necessary consents: Hannum v. Railway Co., 200 Pa. 44.

If plaintiff's property were in a borough, it is clear that no compensation could be gotten for the reason that no land would be taken or injured. The fact that it is in the township entitles him to damages, not because land has been taken or injured, but because the authorities of a township cannot impose the additional servitude upon the township roads without the consent of the abutting landowners: Penna. R. R. Co. v. Montgomery County Pass. Ry. Co., 167 Pa. 62; McDevitt v. People's Nat. Gas Co., 160 Pa. 367.

OPINION BY MR. JUSTICE ELKIN, March 29, 1909:

Some confusion arises in the consideration of the questions

here involved because of changed conditions since the preliminary injunction was granted. In 1903 when the bill was filed the street railway company could not construct its lines upon the highway without the consent of abutting landowners. The consent of the complainant was not obtained and he stood upon his legal rights in asking a court of equity to restrain the threatened invasion. The restraining order was issued and the whole matter remained in statu quo for several years. The street railway company secured the consents of the other abutting property owners along the highway, made a jog in its line so as to avoid the property of appellee, laid its tracks and for several years has operated its lines with the approval of the supervisors and of the people very generally. In 1907 street railway companies were given the right of eminent domain, and in order to exercise this power, it became necessary to have the injunction dissolved. At the hearing for the dissolution of the injunction court and counsel adopted a method of procedure which broadly considered all questions affecting the rights of street railway companies and abutting owners in a condemnation proceeding. The right to condemn was denied so long as the injunction continued, and the power to discontinue the injunction was made to depend upon the status of the street railway company in the assertion of its right of eminent domain. In other words, the burden of establishing all the antecedent facts necessary to the exercise of the power of eminent domain in a condemnation proceeding, was placed on appellant in a proceeding to dissolve the injunction granted several years before the right of eminent domain was conferred. If the law and the facts now existing could have been made to appear in 1903, the injunction then granted could not have been sustained, and the parties would have been required to assert and protect their rights in a condemnation proceeding. What would have resulted then had the right of eminent domain been conferred, which it was not, should now result when this right does exist. Under the circumstances it seems wise to follow the course of procedure adopted in the court below for the purpose of determining the essential questions involved upon their merits. The learned

court below found as a fact that the appellant company having first obtained the consents of the supervisors and abutting landowners had constructed its line of street railway on the southern side of the turnpike road, except where it had deviated from its course to avoid the property of appellee, and for several years had operated thereon. After the passage of the act of 1907 it was deemed expedient to straighten the line by taking out the jog in front of the property of appellee and laying the railway tracks at the southern side of the turnpike road through his lands so that the tracks at this point would be in alignment with other portions of the railway already constructed. There can be no doubt that the situation here presented was the kind of mischief permissible under the old law which the new act was intended to remedy. If a construction shall now be placed upon it to defeat this intention the act will fail of its purpose. This legislation was passed as a result of the demands of the people to secure the greater convenience of rural transportation by street railway, and to encourage companies already incorporated and those subsequently to be formed, to increase their facilities and extend their usefulness. Any proper construction of the act must give due consideration to its intendment. Keeping in view this thought, let us examine the requirements of the statute in order to ascertain whether appellant is in a position to assert its right to adversely and against the wish of appellee lay its tracks upon that portion of the turnpike included in the fee of those represented by complainant. It is provided in the act that, "before the right of eminent domain herein conferred shall be exercised upon any highway, in any township, excepting for the purpose of crossing such highway, the consent of the owners of at least fifty-one per centum of the foot frontage of the entire distance to be traversed longitudinally, on such highway in said township, shall be obtained." It will be observed that the statute does not in terms specify the nature and character of the consent to be obtained, but it is supplemental to an act providing for the incorporation and regulation of street railway companies and deals with the method of condemning lands for the use intended. The use intended is the construction and opera-

tion of lines of street railway, and when a consent in writing has been obtained from an abutting owner which grants the right and privilege of constructing, maintaining and operating a street railway upon the public highway in front of his property and over his fee, it would be sticking in the bark to hold that this is insufficient for the purpose of asserting the right of eminent domain conferred by the act. The right to condemn is based on the public use, which is to construct and operate a street railway. It necessarily follows, therefore, that when fifty-one per centum of the foot frontage represented by the abutting owners to construct, maintain and operate a street railway has been obtained, the precedent condition required by the act in order to exercise the right of eminent domain has been met. The fifty-one per centum of foot frontage refers to the entire distance to be traversed longitudinally upon the highway in any township, and not to a particular portion of it represented by the foot frontage of a complaining property owner. If the latter construction should be adopted the purpose of the act would be defeated. It was intended to prevent one or several property owners from hindering and delaying public improvements, but in order that the rights of abutting owners should not be disregarded it was provided that the owners of at least fifty-one per centum of the foot frontage should consent to the construction of the street railway upon the public highway before the right of eminent domain should be exercised against a nonconsenting owner. The real question here is, does the street railway company have the consents of the owners of fifty-one per centum of the foot frontage along the turnpike in the township? It is conceded that it has the consents of a sufficient number of abutting owners to meet the requirement, but it is contended that these consents were obtained prior to the passage of the act of 1907 and therefore not within its provisions. This is too technical to be substantial. The law looks at the substance, not the shadow. By what has already been said it is clear that if appellant since the act of 1907 had secured the very same kind of consents it now has the requirements of the act in this respect would have been met. It would be an idle thing and an un-

necessary burden to say to this company, you must now go out and again obtain what you already have before the right of eminent domain can be exercised. The consents of property owners representing the necessary foot frontage whether obtained before or after the act is sufficient. The consents obtained before the passage of the act must be regarded as applicable to the general location of the line then made and now existing. In the case at bar the consents must be understood to refer to the location of the street railway on the southern side of the turnpike, and with reference to this location they may be treated as valid consents under the Act of June 1, 1907, P. L. 368. If the general line of street railway should be relocated so as to occupy the center or northern side of the turnpike, it would be necessary to obtain consents for this purpose, because this would introduce new locations and new conditions not contemplated when the original consents were obtained. The act did not modify or change the established rule that only the owners of the fee, or those representing them, had to be consulted in obtaining consents. If the line of street railway does not invade the fee of an abutting owner, his consent is not required and his right to be included in the foot frontage does not exist. In all these respects the law stands as it did before the passage of the act. It is a misapprehension to treat what is attempted to be done in this case as a new location of the line of the street railway system. It is a widening, or perhaps a relocation of the tracks on the turnpike over the land of appellee at a particular point, and is certainly within the reasonable intendment of the act of 1907, or under its express provisions. If by any construction that part of the public highway upon which it is now proposed to lay the tracks could be considered as within the curtilage appurtenant to dwelling house of appellee, and such an interpretation is strained and doubtful, even in such event, it is sufficient to say the act in express terms gives the right to appropriate within the limitations and upon the conditions therein contained. Of course, the owner of the fee may recover damages on the ground that an additional servitude has been imposed upon the highway already dedicated to public use, and such

damages, if any, may be assessed in a proceeding to condemn and cannot be inquired of here. We think the learned court below was right in the first view of the case and erred in entering the final decree.

Decree reversed, injunction dissolved and bill dismissed. Under the circumstances and because the injunction was properly issued in the first instance we think the costs should be paid by appellant and they are so imposed.